## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JEANNE MUTO-KYLE,<br>     Plaintiff<br><br><br>v.<br><br><br>PLUM POINTE WEALTH MANAGEMENT,<br>LLC, PPWM HOLDINGS, INC., and BRIAN<br>DUNCKLEY,<br>     Defendants | C.A. No.<br><br>**DEMAND FOR JURY TRIAL** |

## VERIFIED COMPLAINT

Plaintiff, **Jeanne Muto-Kyle**, by and through her undersigned attorney, brings this Verified

Complaint against Defendants **Plum Pointe Wealth Management, LLC, PPWM Holdings,**

**Inc.,** and **Brian Dunckley**, and alleges as follows:

This action arises from Defendants' breaches of fiduciary duty, breach of contract, and

instances of negligence and fraud, conversion, and violation of the Securities Exchange Act

of 1934 and SEC Rule 10b-5 which have resulted in significant financial harm to Plaintiff.

Plaintiff seeks relief for the unauthorized and mismanaged handling of her investment

accounts, including restitution of losses incurred, compensatory damages, punitive damages,

prejudgment interest, attorneys' fees, and costs.

## PARTIES

1.  Plaintiff, Jeanne Muto-Kyle, a resident of Warwick, RI.

2.  Defendant, Plum Pointe Wealth Management, LLC ("Plum Pointe"), with a principal place of business at 225 Dyer St 2nd Fl & 3rd Fl, Providence, RI 02903.

3.  Defendant, PPWM Holdings, Inc., ("PPWM") F/K/A Plum Pointe Wealth Management, LTD, with a principal place of business at 225 Dyer Street, Floor 2, Providence, RI 02903.

4.  Defendant, Brian Dunckley ("Brian"), a resident of 27 North St, Warwick, RI, 02886.

## JURISDICTION AND VENUE

5.  Jurisdiction is proper in the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States, specifically violations of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants conduct business and are subject to personal jurisdiction in Rhode Island.

## RELATED PARTY DEFINITIONS

7.  Brian is identified as a "Certified Financial Planner" and as the President and CCO of Plum Pointe Wealth Management, LLC.

8.  Brian is identified as the President and "Other Officer" of PPWM according to the

Rhode Island Secretary of State's website.

9. Brian is also the managing member of Saunderstown Partners, LLC.

10. Saunderstown Partners, LLC ("**Saunderstown**") is a "member" of OES Investment Holdings II LLC ("**OES Holdings**"), with Brian S. Dunckley listed as the "Authorized Person" to sign on behalf of OES and Saunderstown.

11. Saunderstown is a Manager of RestauRent Investment Holdings, LLC, ("**REST**") with Brian listed as the "Authorized Person" to sign on behalf of REST.

12. Oxygen Esports LLC ("**OES**") is a Massachusetts limited liability company with a principal place of business located at 193 Winding River Rd, Wellesley, MA 02482.

## THE FACTS

*The Investment Account History and Travel*

13. Plaintiff and Brian had a long standing professional relationship and familial relationship which caused her to trust Brian with her life savings.

14. On or about March 8, 2021, Plaintiff signed a TD Ameritrade Institutional form as the primary account owner and listed Plum Pointe as the investment advisor.

15. On or about March 10, 2021, Plaintiff deposited $100,000 into that TD Ameritrade account (ending in 4116) and entrusted Defendants to invest and grow her portfolio.

16. On or about November 30, 2021, Plaintiff deposited an additional $275,000 into the TD Ameritrade account.

17. On or about September 30, 2023, the TD Ameritrade account was transferred to Schwab as a result of the Schwab acquisition of TD Ameritrade. The balance of the account at transfer was $246,747.46.

18. In January 2025, Plaintiff withdrew her investment from Schwab and placed it in a

self-directed investment account at Morgan Stanley.

19. As of the transfer to Morgan Stanley, Defendants withheld and refused to transfer over $16,649.14 in funds to the control of Plaintiff.

20. Of the 16,649.14 in withheld funds, $11,970 was transferred on April 25, 2025 after Brian sold assets on or about April 1, 2025. The balance of $4,928.54 remains in the Charles Schwab account under the control of Brian who refuses to transfer the funds.

*The OES Investment*

21. On or about January 14, 2022, Brian emailed Plaintiff asking if she was interested in private investment deals, and mentioning a private investment he was working on, specifically OES, with the Kraft family (who are famous for their business prowess).

22. Brian provided Plaintiff with the 2022 "Offering Deck" for OES, which advertised the investment as providing "an unprecedented opportunity for significant growth." It sought to raise $20 million at a $60 million pre-money valuation.

23. On or about February 24, 2022, Plaintiff authorized the transfer of $75,752.06 for an investment in OES.

24. Instead of investing directly into OES, Brian invested Plaintiff's capital in OES Holdings, a Delaware limited liability company (file number 6610622) that Brian created and was the managing director of, by and through Saunderstown.

25. Plaintiff was not advised that her investment was being directed into OES Holdings rather than OES.

26. Upon information and belief, Brian was a majority shareholder in OES Holdings and stood to personally profit from the investments made by Plaintiff and others into OES Holdings.

27. Brian initially refused to provide K-1s for this investment and only provided them after Plaintiff's insistence on April 2, 2025.

28. Upon inquiry, the IRS notified Plaintiff that the K-1s for OES Holdings was filed "very late."

29. The K-1s revealed that Plaintiff was the owner of 6.24% of OES Holdings and not OES as she was lead to believe multiple times by Brian.

30. The 2022 K-1 stated that the business had total assets of $1,157,991 with an ordinary business loss of $43,465 and a net loss of $55,330. Plaintiff's share of the loss was $3,160.

31. The 2023 K-1 stated that the business assets had decreased to $1,028,420 and the business posted an ordinary business loss of $129,454 and a net loss of $134,787. Plaintiff's share of the loss was $8,078.

32. The 2024 draft K-1 stated that the business assets had decreased to $955,069 and the business posted an ordinary business loss of $129,454. Plaintiff's share of the loss was $4,553.

33. In November of 2024, after several no-show appointments, Brian and the Plaintiff finally met for about an hour and Brian assured Plaintiff that all was great and performing "above – benchmark."

34. During this November 2024 meeting, Brian failed to mention that Krafts sold OES nor that OES had filed for bankruptcy protection. Conversely, Brian advised Plaintiff that her investment was "doing better than predicted". Brian knew, or should have known that OES was essentially out of business when he made these statements.

35. On or about August 13, 2024, OES announced that it was in the process of laying off all

employees and shutting down operations entirely.

*The REST Investment*

36. On or about March 14, 2023, Brian requested that Plaintiff invest in a new opportunity held by Defendants.

37. Plaintiff's nephew was on life support during March 2023 and passed on March 15, 2023. Given Plaintiff's pressing family issues, she did not provide consent or agreement to any investment or financial transaction proposed during that period.

38. On or about June 30, 2023, Defendants withdrew $50,255 from the TD Ameritrade Account for REST without prior notice or authorization.

39. On or about February 24, 2024, Brian emailed Plaintiff directly to ask for further investment. Plaintiff did not respond to this email.

40. On or about February 27, 2024, Brian emailed all "RestauRent Investors" advising that the company was entering a second round of fundraising and was seeking $2 million.

41. Brian further claimed in this email, referencing the company's founder, that "Nick expects to be on target for a $30MM valuation into the end of 2025, and sales have grown substantially…"

42. On or about March 24, 2024, Plaintiff replied that she was not interested in investing further.

43. On or about March 26, 2024, Brian again sought a further investment from Plaintiff which was declined by email on March 27, 2024.

44. Brian never disclosed that Saunderstown was a managing director of REST.

*Investment Performance*

45. While Brian was responsible for managing the investment account, he left a substantial

Page 6 of 22

amount of capital as cash instead of invested securities. (See Exhibit A)

For example:

    a. From April 2021 through July 2021, over 50% of the investment capital was held as cash.

    b. From November of 2021 to October of 2022, over 70% of the investment capital was held as cash.

    c. From October 2022 to December 2022, over 50% of the investment capital was held as cash.

    d. From January 2023 to May 2023, over 30% of the investment capital was held as cash.

    e. From June 2023 to December 2024, just over 20% of the investment capital was held as cash.

46. On at least two separate occasions, Brian advised Plaintiff that her accounts were "doing amazing" and making at least 12% in the market.

47. Brian knew, or should have known, that this statement was false when he made it.

48. Defendants performed minimal investment monitoring and performance on the account as evidenced by the following:

    a. Twenty-five securities were purchased on April 23, 2021.

    b. Ten securities were purchased on June 23, 2021.

    c. Five securities were purchased on September 3, 2021.

    d. Two securities were purchased on October 19, 2021.

    e. One security was purchased on November 2, 2021.

    f. Two securities were purchased on April 20, 2022.

      g.   One security was purchased on August 12, 2022.

      h.   One security was purchased on September 8, 2022.

      i.   One security was purchased on October 18, 2022.

      j.   One security was purchased on January 20, 2023.

      k.   One security was purchased on June 17, 2023.

      l.   One security was purchased on August 23, 2024.

49. While Brian was responsible for managing the investment account, the account grew by only 0.32% as a result of the investments after deducting fees and expenses. (See Exhibit A)

*Sanderstown Partners and Attempted Coverup*

50. Plaintiff had no awareness prior to January 2025 that Sanderstown Partners was owned by Brian.

51. Plaintiff discovered this fraudulent scheme when she requested a copy of all relevant documents as part of her estate planning.

52. Instead of providing signed documents, Brian provided blank documents with the following instructions.

> "These are the signature pages I would have sent over to you to sign.
> Please sign them, and we can date them for the dates of your respective deposits.
> I will countersign upon receipt, and forward back official copies for your records."

53. Plaintiff did not recall seeing these documents when she was presented them, and believes that she never signed these documents. She further refused to sign and back date them as instructed.

## COUNT 1 – BREACH OF FIDUCIARY DUTY
### (PLUM POINTE AND PPWM)

54. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

55. As registered investment advisors to the Plaintiff under the Investment Advisers Act of 1940 and Rhode Island Uniform Securities Act (R.I. Gen. Laws § 7-11-101 et seq.), Defendants Plum Pointe and PPWM owed Plaintiff a fiduciary duty. This duty required them to act with the utmost loyalty and good faith, to place Plaintiff's interests before their own, to make full and fair disclosure of all material facts, and to exercise reasonable care in the management of her investments.

56. Defendants Plum Pointe and PPWM breached their fiduciary duty to the Plaintiff by, among other things:

   a. Failing to act in the best interest of the Plaintiff by engaging in unauthorized investments and by improperly managing her investment account.

   b. Holding substantial amounts of Plaintiff's capital as uninvested cash for extended periods, contrary to the objective of growing her portfolio, as detailed in paragraph 45.

   c. Failing to achieve meaningful growth in the account, which grew by only 0.32% after deducting fees and expenses, as a direct result of their mismanagement (Paragraph 46).

57. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered significant financial losses, including but not limited to: (1) the loss of capital from unauthorized and poorly performing investments; (2) the loss of reasonable market returns that should have been achieved had her capital been properly

invested rather than held in cash; and (3) opportunity costs and damages from being placed in investments that primarily benefited the Defendants rather than Plaintiff. During the relevant period, the S&P 500 index returned approximately 24%, while Plaintiff's account grew by only 0.32% after fees.

## COUNT 2 – BREACH OF CONTRACT
### (PLUM POINTE AND PPWM)

58. Plaintiff incorporates by reference the allegations contained in paragraphs above as if fully set forth herein.

59. Plaintiff and Defendants Plum Pointe and PPWM entered into an investment advisory agreement on November 24, 2024, wherein the Defendants agreed to manage Plaintiff's investments in exchange for a fee.

60. Plaintiff paid over $15,000 in management fees during the contract.

61. A material term of this agreement, whether express or implied, was that Defendants would only make investments and withdrawals with Plaintiff's authorization.

62. On or about June 30, 2023, Defendants breached this agreement by withdrawing $50,255 from Plaintiff's account for an investment in REST without her prior knowledge, notice, or consent (Paragraph 38).

63. Under Rhode Island law, every contract carries an implied covenant of good faith and fair dealing, requiring that the parties act fairly and in good faith towards each other, and not do anything to destroy or injure the right of the other party to receive the benefits of the agreement.

64. Defendants breached this implied covenant by engaging in conduct that was dishonest, deceptive, and not in good faith, specifically by:

a. Making unauthorized withdrawals from Plaintiff's account, including the withdrawal of $50,255 for an investment in RestauRent Investment Holdings, LLC ("REST") without Plaintiff's prior knowledge, notice, or consent.

b. Failing to disclose material conflicts of interest, such as Brian Dunckley's control over REST and directing Plaintiff's funds into OES Holdings, over which he also had control, instead of Oxygen Esports LLC, thereby concealing the true nature of the investments.

65. Defendants' actions undermined the purpose of the investment advisory agreement and deprived Plaintiff of the benefit of her bargain, as the agreement required Defendants to act in Plaintiff's best interests and with full transparency.

66. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages, including financial losses and lost investment opportunities.

67. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and any other relief deemed just and proper by the Court.

68. The investment advisory agreement contains a clause requiring that disputes arising thereunder be submitted to arbitration. Accordingly, Plaintiff requests that this Court stay the proceedings as to this Count and compel arbitration pursuant to R.I. Gen. Laws § 10-3-2.

### COUNT 3 – NEGLIGENCE
### (PLUM POINTE AND PPWM)

69. Plaintiff incorporates by reference the allegations contained in paragraphs above as if fully set forth herein.

70. Defendants Plum Pointe and PPWM owed Plaintiff a duty to exercise the degree of care, skill, and diligence that a reasonably prudent investment manager would use in similar circumstances.

71. Defendants breached this duty by failing to properly invest Plaintiff's funds, which resulted in the account languishing with minimal growth and significant cash holdings for prolonged periods (Paragraphs 45, 46).

72. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered financial losses in the form of diminished investment returns and lost opportunity.

## COUNT 4 – FRAUD AND MISREPRESENTATION
### (PLUM POINTE AND PPWM)

73. Plaintiff incorporates by reference the allegations contained in paragraphs above as if fully set forth herein.

74. Defendants made false representations of material fact and failed to disclose material information regarding Plaintiff's investments.

75. Specifically, Defendants solicited an investment for Oxygen Esports LLC ("OES") but directed Plaintiff's funds into OES Investment Holdings II LLC ("OES Holdings"), an entity created and controlled by their President, Brian Dunckley, without disclosing this critical structural difference to the Plaintiff (Paragraphs 24, 25).

76. Defendants knew or should have known that these representations and omissions were false and misleading. They were made with the intent of inducing Plaintiff to invest.

77. Plaintiff justifiably relied on these misrepresentations and omissions when she authorized the investment, and as a result, suffered damages in an amount to be proven at trial.

## COUNT 5 – CONVERSION
### (PLUM POINTE AND PPWM)

78. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

79. On or about the filing of this complaint, Defendants Plum Pointe and PPWM wrongfully exercised control over Plaintiff's property by withholding and refusing to transfer $4,928.54 in funds to her control.

80. Plaintiff did not consent to this unauthorized withholding of her funds, and despite her demands for the transfer, Defendants have continued to retain control over these funds.

81. Defendants' unauthorized retention of Plaintiff's funds deprived her of the rightful use and enjoyment of her property, constituting conversion under Rhode Island law.

82. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered financial damages, including the loss of access to her funds and any potential gains she could have realized had the funds been timely transferred to her control.

## COUNT 6 – BREACH OF FIDUCIARY DUTY
### (BRIAN DUNCKLEY)

83. Plaintiff incorporates by reference the allegations contained in paragraphs above as if fully set forth herein.

84. As the President and Chief Compliance Officer of Plum Pointe and the individual directly managing Plaintiff's investments, Defendant Brian Dunckley personally owed Plaintiff a fiduciary duty of the highest order.

85. Defendant Dunckley breached his fiduciary duty by, among other things:

   a. Engaging in self-dealing by directing Plaintiff's funds into OES Holdings, an

entity he controlled through another of his companies, Saunderstown Partners, LLC, without her knowledge or consent (Paragraphs 10, 24).

    b. Making unauthorized and undisclosed investment maneuvers for his own benefit rather than the Plaintiff's.

    c. Withdrawing funds for the REST investment without Plaintiff's authorization (Paragraph 38).

86. As a direct and proximate result of Defendant Dunckley's breaches of his fiduciary duties, Plaintiff has suffered significant financial losses, including but not limited to, the loss of capital from unauthorized and self-dealing investments, and the loss of reasonable market returns that should have been achieved had her capital been managed with undivided loyalty and professional care.

## COUNT 7 – CONVERSION
## (BRIAN DUNCKLEY)

87. Plaintiff incorporates by reference the allegations contained in paragraphs above as if fully set forth herein.

88. On or about June 30, 2023, Defendant Dunckley intentionally and without authorization wrongfully exercised control over Plaintiff's property by directing the withdrawal of $50,255 from her account for the REST investment.

89. Plaintiff did not consent to this transaction, and has no memory of Brian presenting it, particularly given she was dealing with a family emergency (Paragraphs 37, 38).

90. Defendant Dunckley's unauthorized act deprived Plaintiff of her property and constitutes conversion under Rhode Island law.

## COUNT 8 – NEGLIGENCE
### (BRIAN DUNCKLEY)

91. Plaintiff incorporates by reference the allegations contained in paragraphs above as if fully set forth herein.

92. Defendant Dunckley owed Plaintiff a duty to manage her investment portfolio with professional competence and to keep her reasonably informed.

93. Defendant Dunckley breached this duty by failing to provide timely K-1 tax forms and by failing to correctly inform the Plaintiff about the status and true structure of her investments (Paragraphs 25, 27).

94. This negligent management caused confusion, delayed tax filings, and contributed to Plaintiff's financial damages.

## COUNT 9 - FRAUD AND MISREPRESENTATION
### (BRIAN DUNCKLEY)

95. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

96. Defendant Brian Dunckley made false representations of material fact and failed to disclose critical information regarding Plaintiff's investment in RestauRent Investment Holdings, LLC ("REST").

97. Specifically, Defendant Dunckley solicited an investment from Plaintiff into REST without disclosing that Saunderstown Partners, LLC, a company controlled by him, was a managing director of REST. He failed to inform Plaintiff of this significant conflict of interest and his indirect control over REST (Paragraph 83).

98. Defendant Dunckley knew or should have known that these omissions were false and

misleading. They were made with the intent of inducing Plaintiff to invest in REST.

99. Plaintiff justifiably relied on these misrepresentations and omissions when she was unknowingly invested in REST, resulting in damages including unauthorized withdrawals and diminished returns.

100. As a direct and proximate result of Defendant Dunckley's fraudulent conduct, Plaintiff has suffered financial damages, the full extent of which will be determined at trial.

### COUNT 10 – DECEPTIVE TRADE PRACTICES
### (ALL DEFENDANTS)

101. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

102. Defendants Plum Pointe, PPWM, and Brian engaged in deceptive trade practices in violation of the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1 et seq.

103. Plaintiff procured the services of Defendants for personal purposes.

104. Defendants misrepresented or omitted material facts regarding the nature and quality of the investment services they provided to Plaintiff, including but not limited to:

   a. Misrepresenting the structure and security of Plaintiff's investments, such as directing funds to OES Holdings instead of Oxygen Esports LLC without disclosure.

   b. Soliciting unauthorized investments and making withdrawals without Plaintiff's consent, as seen in the REST investment.

105. Defendants' actions were likely to mislead a reasonable consumer acting under similar circumstances and did, in fact, mislead the Plaintiff, causing her to suffer significant

financial harm.

106. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff has suffered damages, including financial losses and lost investment opportunities.

107. Plaintiff seeks relief under R.I. Gen. Laws § 6-13.1-5.2, including actual damages, punitive damages in the amount of 3 times the amount of actual damages, attorney's fees, and any other relief deemed just and proper by the Court.

## COUNT 11 - UNJUST ENRICHMENT
### (ALL DEFENDANTS)

108. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

109. Plaintiff conferred a benefit upon Defendants Plum Pointe, PPWM, and Brian by paying fees for the management of her investment accounts.

110. Defendants knowingly accepted and retained these fees under circumstances that make it inequitable for them to retain such compensation without providing the professional and diligent management services promised.

111. Specifically, Defendants failed to manage Plaintiff's investment account in a professional or diligent manner, as evidenced by their holding substantial amounts of Plaintiff's capital as uninvested cash for extended periods and achieving only minimal growth in the account, as detailed in Paragraphs 68 and 75.

112. As a result of Defendants' inadequate management, Plaintiff received no meaningful benefit from the fees paid, while Defendants were unjustly enriched by both collecting fees without fulfilling their obligations and by retaining control over substantial amounts of Plaintiff's uninvested funds for their own benefit.

113. It would be unjust for Defendants to retain both the fees derived from their inadequate management and any benefits obtained from withholding Plaintiff's funds in cash accounts without compensating Plaintiff for the lack of services rendered and lost investment opportunities.

## COUNT 12 – CONSTRUCTIVE FRAUD
### (ALL DEFENDANTS)

114. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115. Defendants, as fiduciaries and investment advisors, owed Plaintiff a duty to disclose all material information and to manage her investments with due diligence and care.

116. Defendants breached their duty by failing to disclose material facts and by mismanaging Plaintiff's investments.

117. Defendants' omissions were material to Plaintiff's decision-making regarding her investments and constituted constructive fraud.

118. As a direct and proximate result of Defendants' constructive fraud, Plaintiff has suffered financial damages, including the loss of capital and diminished returns.

## COUNT 13 – PROFESSIONAL MALPRACTICE
### (ALL DEFENDANTS)

119. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

120. As licensed and registered investment advisors, Defendants Plum Pointe, PPWM, and Brian owed Plaintiff a duty to perform their services with the degree of skill, care, and

diligence commonly exercised by professionals in their field.

121. Defendants breached their professional duty by failing to adhere to the standards of care required of investment advisors. This included, but was not limited to, making unauthorized investments, failing to provide timely and accurate information regarding the state of Plaintiff's investment portfolio, and engaging in self-dealing practices that prioritized their interests over those of the Plaintiff.

122. Specifically, Defendants failed to properly manage Plaintiff's investment portfolio, resulting in significant financial losses and diminished returns.

123. Defendants' actions and omissions constituted a departure from the accepted standards of professional conduct for investment advisors and amounted to professional malpractice.

124. As a direct and proximate result of Defendants' professional malpractice, Plaintiff has suffered damages, including financial losses, lost investment opportunities, and additional costs related to the mismanagement of her investment accounts.

125. Plaintiff seeks compensatory damages, attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT 14 – SECURITIES FRAUD UNDER SEC RULE 10B-5
### (ALL DEFENDANTS)

126. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

127. Defendants directly and through instrumentality of interstate commerce engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff in connection with the purchase and sale of securities.

128. Defendants, knowingly and with the intent to deceive, misrepresented and omitted material facts related to the nature and quality of Plaintiff's investments, particularly in connection with the investments in OES Holdings and REST.

129. Specifically, Defendants solicited investments under the pretense of investing directly in Oxygen Esports LLC, but instead directed Plaintiff's funds into OES Holdings, an entity created and controlled by Defendant Brian Dunckley, without disclosing this critical structural difference to Plaintiff.

130. Defendants further failed to disclose material conflicts of interest, such as Defendant Dunckley's control over OES Holdings and REST, which compromised his ability to act in Plaintiff's best interests.

131. Plaintiff justifiably relied on Defendants' misrepresentations and omissions when deciding to authorize the investment, believing them to be truthful and complete, which induced her to invest substantial sums.

132. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered economic loss, including the loss of capital from unauthorized and poorly performing investments, and a failure to achieve reasonable market returns.

133. Plaintiff seeks relief in the form of compensatory damages, interest, attorney's fees, and any other relief deemed just and proper by the Court.

**DEMAND**

WHEREFORE, Plaintiff Jeanne Muto-Kyle, demands judgement for damages against Defendant Plum Pointe Wealth Management, LLC, PPWM Holdings, Inc., and Brian Dunckley, punitive damages, attorneys' fees, costs, and all other relief this court deems proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully Submitted,

JEANNE MUTO-KYLE,
      Plaintiff


By her Attorney,


*/s/ Nicholas A. Matlach*
Nicholas Arthur Matlach (10663)
nick@ioliberum.com
ioLiberum Law Firm, P.C.
123 N. Main St.
Suite 302-303
Providence, RI 02903
(401) 300-4439
(401) 900-8721 (FAX)

DATED: June 30, 2025

## VERIFIED COMPLAINT

I, Jeanne Muto-Kyle, hereby verify that I am the Plaintiff in the above-captioned action, and I have read the foregoing Verified Complaint. The facts and allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Sworn to and subscribed to this 10th day of July 2025.

_____

Jeanne Muto-Kyle, Plaintiff

_____

STATE OF RHODE ISLAND

COUNTY OF PROVIDENCE

On this 10th day of July 2025, before me, the undersigned notary public, personally appeared Jeanne Muto-Kyle, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

_____

Nicholas Matlach, Notary Public (770537)

My Commission Expires: 5/19/2027

NICHOLAS MATLACH
Notary Public, State of Rhode Island
My Commission Expires May 19, 2027